1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  TOMAS R. GUILLEN,                    CASE NO.    1:03-cv-06004-LJO-MJS

11              Plaintiff,               PLAINTIFF'S   AMENDED   COMPLAINT
                                         DISMISSED WITH LEAVE TO AMEND
12       v.
                                         (ECF No. 20)
13  M. FOX, et al.,

14              Defendants.              SECOND AMENDED COMPLAINT DUE
                                         WITHIN THIRTY DAYS
15

16  _____/

17

18                          **SCREENING ORDER**

19  **I.    PROCEDURAL HISTORY**

20       Plaintiff Tomas R. Guillen ("Plaintiff") is an inmate in the custody of the California

21  Department of Corrections and Rehabilitation and is proceeding pro se and in forma

22  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action

23  on July 25, 2003. (ECF No. 1.)  Plaintiff's original Complaint was dismissed with leave to

24  amend on February 12, 2009.  (ECF No. 13.)  Plaintiff failed to amend and the action was

25  dismissed on April 21, 2009.  (ECF Nos. 14 & 15.)  On May 18, 2009, Plaintiff filed a

26

27

                                         1

1
2
3
4
5

Motion for Reconsideration and requested permission to file an amended complaint.  The

Court reopened the case, and Plaintiff filed a First Amended Complaint on March 2, 2010.

(ECF Nos. 10 & 20.)  No other parties have appeared.  Plaintiff's First Amended Complaint

is now before this Court for screening.

6
7

For the reasons set forth below, the Court finds that Plaintiff has failed to state a

claim upon which relief may be granted.

8

**II.    SCREENING REQUIREMENTS**

9
10
11
12
13
14
15
16
17
18
19

The Court is required to screen complaints brought by prisoners seeking relief

against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from

such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion

thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

20
21
22
23
24
25
26
27

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

(2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set

forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual

allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

**III.    SUMMARY OF COMPLAINT**

Plaintiff brings this action for.  Plaintiff sues the following individuals for retaliation and conspiracy: M. Fox, Facility Captain; K. Mahaney, Correctional Lieutenant; J. S. Frohrich, Investigative Services Unit ("ISU"); C. McCreedy, Sergeant; A. Ailanjian, Correctional Officer; R. Bird, Lieutenant; P. Rawlinson, Lieutenant for ISU; A. Dennis, Correctional Officer for ISU; and John Does 1-10. All Defendants were employed at Sierra Conservation Center ("SCC") during the events in question.

Plaintiff alleges as follows:  In January 2001, a riot occurred at SCC between southern Hispanic inmates and black inmates.  Interviews of the inmates were conducted afterward.  During his interview, Plaintiff was asked by Defendants Fox and Mahaney if he would act as a mediator between the two groups to promote peace and stabilize the yard. Defendants promised to reward Plaintiff if he cooperated.  Plaintiff refused the offer.

On February 25, 2001, Plaintiff's cell was searched by Defendant Ailanjian.  Plaintiff was given a CDC-115 violation for possessing contraband and placed in administrative segregation ("ad-seg").  On March 10, 2001, a hearing for the contraband charge was held by Defendant Mahaney.  Mahaney told Plaintiff that if he would just cooperate and act as a mediator, the charge would disappear.  Plaintiff initially refused, but was then pressured into complying.  Plaintiff mediated between black inmates and southern Hispanic inmates. The CDC-115 violation ended up being dismissed.

In April 2001, Plaintiff explained his situation and that he wanted to quit being a mediator, and asked Defendant Frohrich and two other officers for a transfer.  Plaintiff was scheduled to transfer on July 27, 2001.  On July 25, 2001, Plaintiff's cell was searched and

the officers conducting the search claimed to have found heroin.  Plaintiff received a CDC-115 for possession of heroin.[1]

In August 2001, another riot occurred.  Fox and Mahaney asked Plaintiff to mediate and said that his possession of heroin charge would disappear if he did.  Plaintiff complied under duress.  In March 2002, Plaintiff requested and was accepted into the substance abuse program ("SAP") at SCC.  Fox repeatedly requested that Plaintiff be excused from the program so he could act as mediator again.  These requests were denied.

Plaintiff was injured by a southern Hispanic inmate on August 17, 2002, and placed in ad-seg because of the assault.  Fox released Plaintiff from ad-seg and removed him from the SAP program.  Plaintiff was then placed back in the SAP program by another official, and removed again by Fox.  Finally, Plaintiff was placed in ad-seg for his own protection.

Plaintiff seeks declaratory, preliminary, and permanent injunctions, compensatory and punitive damages, a jury trial, and costs.

## IV.   ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal

---

[1] Plaintiff, apparently, was not allowed to transfer after the heroin was found in his cell as he continued to function as mediator at SCC.

1
2
Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

3
4
**A.**   **First Amendment**

5
6
7
Plaintiff states that he was retaliated against by Defendants for refusing to comply with their requests to act as a mediator between the inmates.  The Court reads this as a First Amendment retaliation claim.

8
1.   Retaliation

9
10
11
12
13
14
15
"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

16
17
18
19
20
21
22
23
24
25
26
Although the Complaint clearly set forth facts indicating that Plaintiff suffered adverse action as a result of his refusal to acquiesce to coercion by Defendants, the Court is unable to associate this adverse action to the Plaintiff's exercise of, or to a chilling effect on, any constitutionally protected conduct.  Although the behavior attributed to the Defendants is this regard is offensive to the Court, the Court  is unaware of any **constitutional** right to be free from such coercion. The pleadings do not indicate that Plaintiff was engaging in any protected conduct or pursuing a First Amendment right. Without that, Plaintiff has not stated a claim for retaliation under the First Amendment. This claim therefore must be, and will be, dismissed.  Plaintiff will be given  leave to

27

amend.  Any amendment must address the deficiencies identified above or identify  law allowing Plaintiff to otherwise proceed on such a claim.

### 2.   Unconstitutional Practice

Plaintiff's claim could be viewed as attributing unconstitutional practice to Defendants.  However, a prison is authorized under the law to adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  Thus to pursue a claim under Turner, Plaintiff must allege, if he can do so truthfully, that forcing him to mediate was part of a prison policy or practice  not reasonably related to a legitimate penological goal.  Plaintiff will be given leave to amend to try to assert such a claim.

### 3.   Right Not to Speak

Plaintiff cites no authority, and the Court is not aware of any, to the effect  that the First Amendment  protects one's right not to speak in circumstances such as those alleged here.   Conduct protected by the First Amendment in the prison context has included such things as filing of a prison grievance, Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003), giving legal assistance to other inmates, Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985), and access to the courts, Lewis v. Casey, 518 U.S. 343, 346 (1996).   Nothing herein falls within the ambit of such cases.

### B.   **Substantive Due Process**

Although Plaintiff does not allege a due process violation, his claim may be construed as one brought pursuant to the substantive component of the Due Process Clause of the Fourteenth Amendment which protects prisoners from being deprived of life,

6

liberty, or property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). "'The touchstone of due process is protection of the individual against arbitrary action of government.'" Id. at 845 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847 (quoting Collins v. Harker Heights, 503 U.S. 115, 128 (1992)). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Id. at 848. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 849.

In resolving a Fourteenth Amendment substantive due process claim, the Court must balance "'several factors focusing on the reasonableness of the officers' actions given the circumstances.'" White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (quoting Smith v. City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999). "[S]ubstantive due process requires that the act of the government be arbitrary to the extent that it shocks the conscience before a constitutional violation will be found." Davis v. Powers, 2010 WL 2163134, *9 (April 16, 2010) (citing Lewis, 523 U.S. at 845-47; United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392, 399 (3rd Cir. 2003). The

ultimate inquiry within a substantive due process claim is whether the "behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" or "interferes with rights" implicit in the concept of ordered liberty.  Morgan v. Bend-La Pine School Dist., 2009 WL 312423, *11 (D.Or. Feb. 6, 2009), (quoting Lewis, 523 U.S. at 847).  The Court in Morgan found that "the plaintiff must demonstrate 'conduct intended to injure in some way unjustifiable by any government interest [which] is the sort of official action most likely to rise to the conscience-shocking level.'"  Id. (citing Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008)).

As pleaded, Plaintiff has not included sufficient factual detail to enable the Court to conclude that Defendants' forcing Plaintiff to act as mediator was arbitrary enough to "shock the conscience" and violate his due process rights. Plaintiff will be given leave to amend, but in doing so must keep in mind that due process does not impose liability on a constitutional level whenever someone acting with state authority causes harm.  The due process clause does not guarantee that the Defendants take due care.  The Court will not impose liability for negligent inflictions of harm.  To be liable, the conduct must have been intended to injure in some unjustifiable way.

**C.    State Law Claim**

It appears to the Court that Plaintiff's best, and perhaps only, vehicle for relief may be an action in state court for coercion or some other personal injury claim. The Court does not reach the viability of Plaintiff's state law as it will not exercise supplemental jurisdiction over state law claims unless Plaintiff is able to state a cognizable federal claim.  28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001).

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### D.   Conspiracy

Plaintiff states that Defendants conspired to get Plaintiff to agree to act as mediator.

To state a viable conspiracy claim pursuant to Section 1983, a plaintiff must "state specific facts to support the existence of the claimed conspiracy." Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted).  The Ninth Circuit has held that "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (citation omitted)).  Plaintiff must therefore show "an agreement or 'meeting of the minds' to violate constitutional rights."  Id. However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (citation omitted).  Accordingly, "a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement" may indicate the existence of a conspiracy. Id. (citation and internal quotation marks omitted).

Section 1985 proscribes conspiracies that interfere with an individual's civil rights. Section 1985(2) proscribes conspiracies for the purpose of impeding the due course of justice in any state with the intent to deny equal protection of the laws, and Section 1985(3) proscribes conspiracies that deny equal protection of the law or equal privileges and immunities.  Coverdell v. Dep't. of Soc. and Health Svcs., State of Washington, 834 F.2d 758, 767 (9th Cir. 1987).  An allegation of racial or class-based discrimination is required to state a claim for relief under either Section 1985(2) or Section 1985(3). Bretz v. Kelman,

9

773 F.2d 1026, 1028-1030 (9th Cir. 1985).

To state a cause of action under Section 1985(3), Plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.  Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under Section 1985 must allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff's conclusory allegations of a conspiracy are not sufficient to state a claim. His claim is missing the most basic elements: meeting of the minds and violation of constitutional rights.  Plaintiff does not demonstrate a meeting of the minds between Defendants.  He does not say which Defendants were involved in the conspiracy.  The facts, as currently pleaded, do not identify any violations of any constitutional rights.  Thus, this claim is dismissed.  Plaintiff will be given leave to amend.

### E.    Failure to Protect

Arguably, Plaintiff is alleging that Defendants Fox and Mahaney failed to protect him

10

from other inmates.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).   Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners.   Farmer, 511 U.S. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).   An inmate has no constitutional right, however, to enjoy a particular security classification or housing.   See Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).   Further, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]"   Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)).

Rather, to state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.   Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc).   To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837.   That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and

11

he must also [have] draw[n] the inference." <u>Farmer</u>, 511 U.S. at 837; <u>Frost</u>, 152 F.3d at 1128; <u>Redman</u>, 942 F.2d at 1442.

It can be implied from Plaintiff's First Amended Complaint that he was at risk to suffer substantial harm at the hands of other inmates because of his role as a mediator. This risk of harm is evidenced by the attack on Plaintiff by the Southern Hispanic inmate. It appears that Defendant Fox, in particular, repeatedly placed Plaintiff in harm's way by repeatedly removing Plaintiff from SAP to mediate.  It is also apparent that Defendant Fox did this with full knowledge of the possible consequences of his actions.  There is no indication  any precautions or protective measures were taken for Plaintiff's personal safety.

However, these are assumptions,  and nothing more, on the part of the Court .  The Court can  not rely on such assumptions to substantiate a claim.  If Plaintiff would like to pursue a claim for failure to protect under the Eighth Amendment, he must demonstrate that the Defendants were aware of a serious risk of harm to Plaintiff and then deliberately disregarded the risk to Plaintiff's safety.

**F.    Personal Participation and Supervisory Liability**

As currently pleaded the Defendants' conduct does not appear to be unconstitutional.

Under Section 1983, Plaintiff must demonstrate that <u>each</u> named Defendant personally participated in the deprivation of his rights.  <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer.  <u>Iqbal</u>, 129 S.Ct. at 1949.  "Government officials may not be held liable for the

12

unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Id. at 1948-49.

Plaintiff has not alleged facts demonstrating that any of the named Defendants personally acted to violate his rights.  Plaintiff needs to specifically link each Defendant to a violation of his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

### G.    Doe Defendants

Plaintiff names John Doe 1-10 as Defendants.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff.  Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem:  those persons cannot be served with process until they are identified by their real names."  Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that John Doe defendants can not be served by the United States Marshal until he has identified them as actual individuals and amended his complaint to substitute the Defendants' actual named.  The burden remains on Plaintiff to promptly discover the full name of Doe Defendants; the Court will not undertake to investigate the names and identities of unnamed defendants.  Id.  The Court will grant Plaintiff leave to

amend this claim and attempt to set forth sufficient identification.

## V.   **CONCLUSION AND ORDER**

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants or claims.  Plaintiff should focus the amended complaint on claims and defendants relating solely to issues arising out of the incidents discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2.    Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:03-cv-6004-LJO-MJS (PC); and

3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.


IT IS SO ORDERED.

Dated:   March 25, 2011          /s/ *Michael J. Seng*
                           UNITED STATES MAGISTRATE JUDGE

15